## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HARRY BOURG CORPORATION** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-4989** |
| **GULF SOUTH PIPELINE COMPANY, LLC** | **SECTION: "G"(2)** |

## <u>ORDER AND REASONS</u>

  In this litigation, Plaintiff Harry Bourg Corporation ("Plaintiff") seeks the eviction of Defendant Gulf South Pipeline Company, LLC ("Defendant") from its property located in Terrebonne Parish after the commercial lease between Plaintiff and Defendant expired.[1] On July 31, 2023, Plaintiff filed a petition for eviction against Defendant in the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana.[2] On August 30, 2023, Defendant removed the case to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a) and federal question jurisdiction under 28 U.S.C. § 1331.[3] Pending before the Court is Plaintiff's Motion to Remand.[4] Defendant opposes the motion.[5] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies Plaintiff's Motion to Remand.

---

[1] Rec. Doc. 1-2.

[2] *Id.*

[3] Rec. Doc. 1.

[4] Rec. Doc. 5.

[5] Rec. Doc. 6.

1

## I. Background

### A.      *Factual Background*

Plaintiff is the owner of a piece of commercial property ("the property") located in Terrebonne Parish, Louisiana.[6] In the petition, Plaintiff alleges that it entered into a Surface Lease and Facilities Agreement ("Surface Lease") with Defendant on January 1, 2003, related to the property in Terrebonne Parish.[7] Plaintiff alleges that Defendant laid its pipelines on the property as part of its use of the land under the Surface Lease.[8] Plaintiff alleges that the initial lease was for a 10-year period expiring on January 1, 2013, and the parties renewed this lease for another 10-year period expiring on January 1, 2023.[9]

Plaintiff alleges that on November 15, 2022, it mailed Defendant a written Notice of Expiration.[10] Plaintiff further alleges that on February 22, 2023, it mailed Defendant a written Notice to Vacate.[11] Plaintiff alleges that between February and June 2023, Plaintiff and Defendant attempted to renegotiate the Surface Lease and communicated about Defendant's pipelines on the property, including the location of easements that Defendant had for the pipelines.[12] Plaintiff alleges that on July 21, 2023, it mailed a second written Notice to Vacate to Defendant.[13] Plaintiff

---

[6] Rec. Doc. 1-2 at 1.

[7] *Id.* at 5.

[8] *Id.* at 5–6.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 6.

[13] *Id.*

seeks possession of its property and the removal of Defendant's pipelines and related appurtenant parts and equipment.[14] Plaintiff seeks "all costs to be assessed on the Defendant."[15]

## B.    Procedural Background

On July 31, 2023, Plaintiff filed a petition for eviction in the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana, against Defendant.[16] On August 30, 2023, Defendant removed Plaintiff's petition to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a) and federal question jurisdiction under 28 U.S.C. § 1331.[17] Defendant avers that the Court may exercise diversity jurisdiction because there is complete diversity of the parties, as Plaintiff is a citizen of Louisiana and Defendant is a citizen of New York and Delaware, and the $75,000 amount in controversy requirement is met because it would cost Defendant more than $75,000 to remove its pipelines and equipment from Plaintiff's property.[18] Defendant also argues that removal is proper under 28 U.S.C. § 1331 because Plaintiff's petition involves natural gas pipelines and related appurtenances, which are subject to the jurisdiction of federal agencies like the Federal Energy Regulatory Commission ("FERC") and the Pipeline and Hazardous Materials safety Administration ("PHMSA") and governed by the Natural Gas Act ("NGA").[19] On

---

[14] *Id.* at 7.

[15] *Id.*

[16] *Id.*

[17] Rec. Doc. 1.

[18] *Id.* at 3–5. Defendant asserts that it is a limited liability company in which the first natural person or corporation in its corporate structure is Boardwalk Pipelines Holding Corporation, which is incorporated in Delaware and has its principal place of business in New York. Defendant also provided an affidavit from its Regional Vice President that it would cost more than $75,000 to remove its pipelines and equipment from Plaintiff's property.

[19] *Id.* at 6.

September 25, 2023, Plaintiff filed the instant motion to remand.[20] On October 10, 2023, Defendant filed a response opposing the motion and also requested oral argument.[21] On October 13, 2023, the Court denied Defendant's request for oral argument after determining that oral argument is unnecessary to resolve the motion.[22]

## II. Parties' Arguments

### A.    Plaintiff's Motion to Remand

Plaintiff moves the Court to remand this case to state court.[23] First, Plaintiff argues that this Court does not have diversity jurisdiction because the $75,000 amount in controversy requirement is not met.[24] Plaintiff reasons that it only seeks the eviction of Defendant rather than any monetary damages such as past rent from Defendant.[25] Plaintiff further reasons that the costs that Defendant would have to incur to effectuate the eviction cannot be the basis of the $75,000 amount in controversy.[26] Plaintiff notes that the Fifth Circuit has held "the value to the plaintiff of the right to be enforced or protected determines the amount in controversy"[27] Plaintiff points to *A. Levet Properties Partnership v. Bank One, N.A.*, where another section of this Court held in an eviction case that to determine the amount in controversy, it was necessary to "value only the right

---

[20] Rec. Doc. 5.

[21] Rec. Docs. 6, 7.

[22] Rec. Doc. 8.

[23] Rec. Doc. 5.

[24] *Id.*

[25] *Id.* at 1.

[26] Rec. Doc. 5-2 at 4–8.

[27] *Id.* at 6 (citing *Alfonso v. Hillsborough Cnty. Aviation Auth.*, 308 F.2d 724, 727 (5th Cir. 1962)).

of possession."[28] The value of the right of possession, in turn, is determined by "'the marginal change in plaintiff's economic position if it obtains possession.'"[29] Plaintiff appears to argue that the amount in controversy here is zero dollars, because it has not asked for any back rent owed.[30] Plaintiff also argues in the alternative that Defendant's annual rent was only $2,500, so it would take 30 years of nonpayment of rent by Defendant to reach the $75,000 in controversy.[31]

Second, Plaintiff argues that Defendant has waived its right to removal because of a forum selection clause in the Surface Lease specifying that "the parties agree that the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana shall be the State court of proper venue and jurisdiction as to resolve any differences between the parties."[32]

Third, Plaintiff avers that the Court does not have federal question jurisdiction because "[t]he fact that Defendant's facilities and pipelines are governed by federal regulations does not prohibit Defendant's eviction by a Louisiana state court."[33] Plaintiff reasons that a summary eviction proceeding involves the single issue of whether the property owner is entitled to possession of the property.[34] Plaintiff further notes that "[t]he state court can consider any

---

[28] *Id.* at 6–7 (citing *A. Levet Properties Partnership v. Bank One, N.A.*, No. 3-1708, 2003 WL 21715010, at *2 (E.D. La. July 21, 2003) (Vance, J.)).

[29] *Id.* at 7 (citing *Levet*, 2003 WL 21715010, at *3).

[30] *Id.*

[31] *Id.* at 7–8.

[32] *Id.* at 8–9.

[33] *Id.* at 9–10.

[34] *Id.* at 9 (citing *Levet*, 2003 WL 21715010, at *2).

arguments presented to it by Defendant to determine the reasonable timeframe within which Defendant may be given the opportunity to remove its assets from Plaintiff's property."[35]

**B.      *Defendant's Opposition to Remand***

In opposition, Defendant first counters that the amount in controversy has been met because Plaintiff seeks to impose costs on Defendant for the removal of the pipelines and other personal property, should Defendant fail to remove its property on its own.[36] Defendant asserts that it would cost more than $75,000 to remove its personal property from Plaintiff's property.[37] Defendant contends that *Levet* is distinguishable from the case here because in *Levet*, the plaintiff did not seek any damages or costs which would meet the $75,000 amount in controversy.[38] Defendant also argues that the amount in controversy is met because Defendant and Plaintiff negotiated renewal of the Surface Lease in February and March 2023, where Defendant offered to renew at an annual rent of $5,000 for two 10-year terms and Plaintiff counter-offered $6,000 per year for an initial 5 year term and three subsequent 5-year terms.[39] Defendant points to *Wright v. AT & T Mobility, LLC* in support of its argument that the parties' rental rate negotiations satisfied the amount in controversy.[40]

---

[35] *Id.*

[36] Rec. Doc. 6 at 2.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 3.

[40] *Id.* at 3–4 (citing *Wright v. AT & T Mobility, LLC*, No. 12-136, 2013 WL 1558323, at *3 (E.D. La. Apr. 10, 2013) (Africk, J.)).

Second, Defendant counters that it has not waived its right to remove the case to federal court.[41] Defendant reasons that the forum selection clause is limited to which state court Plaintiff may wish to file its case, but the forum selection clause does not render that state court venue to be the sole and exclusive venue.[42] Defendant cites to several Fifth Circuit cases in support of this argument.[43]

Third, Defendant counters that the Court has federal question jurisdiction because the pipelines associated with the Surface Lease are governed by FERC regulations and the NGA.[44] Defendant points to 15 U.S.C. Section 717u, which provides that district courts have exclusive jurisdiction of issues related to FERC facilities, and 15 U.S.C. Section 717f(b), which provides for federal jurisdiction.[45]

### III. Legal Standard

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and by statute.'"[46] Pursuant to 28 U.S.C. § 1441(a), a defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. The removing party bears the burden of demonstrating that federal jurisdiction exists.[47] In

---

[41] *Id.* at 4–6.

[42] *Id.*

[43] *Id.* at 4–5 (citing *City of New Orleans v. Municipal Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *McDermott Int'l, Inc. v. Lloyd's Underwriters*, 944 F.3d 1199, 956 (5th Cir. 2001); *Waters v. Browning-Ferris Indus., Inc.*, 252 F.3d 796 (5th Cir. 2001); *Keaty v. Freeport Indonesia, Inc.*, 503 F.3d 955, 956–57 (5th Cir. 1974)).

[44] *Id. at* 6–7.

[45] *Id.* (citing 15 U.S.C. §§ 717u, 717f(b)).

[46] *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[47] *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

assessing whether removal was appropriate, the Court "consider[s] the claims in the state court petition as they existed at the time of removal."[48] The Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "the removal statute should be strictly construed in favor of remand."[49]

## IV. Analysis

Plaintiff seeks to remand this case back to state court, contending that Defendant has waived its right to remove to federal court because of a clause in the Surface Lease.[50] Plaintiff also contends that the Court does not have diversity subject matter jurisdiction because the amount in controversy requirement is not met and that the Court lacks federal question subject matter jurisdiction because the NGA and FERC regulations do not provide the Court with federal question jurisdiction.[51] Defendant opposes, arguing that it has not waived its right to remove this case to federal court.[52] Defendant also argues that it has met the amount in controversy requirement because Plaintiff's marginal change in its economic position if it obtains possession exceeds $75,000 and because it would cost more than $75,000 for them to evict themselves from Plaintiff's property.[53] Defendant further argues that the NGA and FERC regulations accords the Court federal

---

[48] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[49] *Id.*

[50] Rec. Docs. 5, 5-2.

[51] *Id.*

[52] Rec. Docs. 1, 6.

[53] *Id.*

question jurisdiction because Plaintiff's right to relief depends upon the resolution of a substantial question of federal law.[54]

### A.    Whether Defendant has waived its removal right

#### 1.    Applicable Law

As an initial matter, the Court must determine if Defendant has waived its right to remove this case to federal court. In the Fifth Circuit, "[f]or a contractual clause to prevent a party from exercising its right to removal, the clause must give a 'clear and unequivocal' waiver of that right."[55] "A party may waive its rights by explicitly stating that it is doing so, by allowing the other party the right to choose venue, or by establishing an exclusive venue within the contract."[56] In addition, "[a] party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another."[57] The Fifth Circuit explained that "[f]or a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive."[58]

#### 2.    Analysis

The relevant clause in the Surface Lease that Plaintiff points to in support of its waiver argument provides in part that "the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana shall be the State court of proper venue and jurisdiction as to resolve any differences

---

[54] *Id.*

[55] *Mun. Admin. Servs., Inc.*, 376 F.3d at 504 (citations omitted).

[56] *Id.*

[57] *Id.*

[58] *Id.* (citing *Keaty*, 503 F.2d at 955).

between the parties."[59] However, this clause merely states that the 32nd Judicial District Court for the Parish of Terrebonne is the "State court of proper venue and jurisdiction," not the sole venue and jurisdiction. The Fifth Circuit has held that clauses similar to the one here do not constitute a defendant's waiver of its removal right.[60] Even if this clause is susceptible to more than one reasonable interpretation, the Fifth Circuit has also concluded that "[t]he very presence of ambiguity indicates that the clause does not contain a 'clear and unambiguous' waiver of removal rights …"[61] Further, the Surface Lease does not contain any express waiver of Defendant's right to remove to federal court.[62] Nor has Plaintiff has cited any law in support of its argument or provided any evidence that the parties intended the 32nd Judicial District Court to be the sole and exclusive forum. Therefore, Defendant has not waived its removal right.

## B.    *Whether diversity jurisdiction exists*

### 1.    **Applicable Law**

Pursuant to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of

---

[59] Rec. Doc. 5-2 at 8; Rec. Doc. 1-2 at 16.

[60] *Mun. Admin. Servs., Inc.*, 376 F.3d at 504 (The relevant clause: "The undersigned Contractor does not further hereby consent and yield to the jurisdiction of the State Civil Courts for the Parish of Orleans and does hereby formally waive any pleas or jurisdiction on account of the residence elsewhere of the undersigned Contractor."); *Keaty*, 503 F.2d at 956 (The relevant clause: "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York."). *Compare City of New Orleans v. Nat'l Serv. Cleaning Corp.*, No. 96-1601, 1996 WL 419750, at *1, *3 (E.D. La. July 24, 1996) (Duval, J.) (holding that the defendant waived its right to removal because the clause in the contract was unambiguous, providing that "[t]he contractor hereby consents to and stipulates to the personal jurisdiction and venue of the Civil District Court for the Parish of Orleans, Louisiana in any litigation brought under this Article.").

[61] *Mun. Admin. Servs., Inc.*, 376 F.3d at 505–06.

[62] *See* Rec. Doc. 1-2.

interest and costs, and is between" "citizens of different states."[63] Fifth Circuit precedent provides that a removing defendant's burden of showing that the amount in controversy is sufficient to support federal jurisdiction differs depending on whether the plaintiff's complaint alleges a specific amount of monetary damages.[64] When the plaintiff alleges a damage figure in excess of the required amount in controversy, "that amount controls if made in good faith."[65] If the plaintiff pleads damages less than the jurisdictional amount, this figure will also generally control, barring removal.[66] Thus, "in the typical diversity case, the plaintiff remains the master of his complaint."[67]

Louisiana law ordinarily does not allow a plaintiff to plead a specific amount of damages.[68] A plaintiff is, however, permitted to make "a general allegation that the claim exceeds or is less than" a particular amount if making such an allegation is necessary to establish the lack of jurisdiction of federal courts due to insufficiency of damages.[69] When, as here, Plaintiff has alleged an indeterminate amount in controversy, the Fifth Circuit requires the removing defendant to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.[70] A defendant satisfies this burden either "(1) by demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) by setting forth facts in controversy—preferably in the removal

---

[63] 28 U.S.C. § 1332(a).

[64] *See Allen*, 63 F.3d at 1335.

[65] *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

[66] *Id.*

[67] *Id.*

[68] *See* La. Code Civ. P. art. 893.

[69] *Id.*

[70] *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000); *see also Simon v. Wal-Mart Stores, Inc.,* 193 F.3d 848, 850 (5th Cir. 1999); *Allen*, 63 F.3d at 1335.

petition, but sometimes by affidavit—that support a finding of the requisite amount."[71] The defendant must do more than point to a state law that might allow the plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeds $75,000.[72] Finally, the jurisdictional facts that support removal "must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time."[73]

In actions where the plaintiff seeks declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation.[74] In the Fifth Circuit, "'[t]he value to the plaintiff of the right to be enforced or protected determines the amount in controversy.'"[75] Although determining the amount in controversy is a federal question requiring the application of federal standards, the Court is required to look to state law to determine the nature and extent of the right to be enforced in a diversity case.[76]

Louisiana law "provides a summary process for eviction of a lessee by a lessor because the lease had ended due to expiration of its term or for other lawful cause."[77] "It is well settled that a

---

[71] *Simon*, 193 F.3d at 850 (quoting *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999)); *see also Allen*, 63 F.3d at 1335.

[72] *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

[73] *Allen*, F.3d at 1335.

[74] *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); *Austin Prop. Assocs., L.L.C. v. Huntington Beach 2, L.L.C.*, 747 Fed. Appx. 1000, 1001 (citing *St. Paul Reinsurance Co. v. Greenberg*, 135 F.3d 1250, 1253 (5th Cir. 1998) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)).

[75] *Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 639 (5th Cir. 2003) (quoting and citing *Hillsborough*, 308 F.2d at 727).

[76] *See Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 352–53 (1961).

[77] *Affordable Care, LLC v. Martin*, No. 54,286-CA, p. 621 (La. App. 2 Cir. 4/13/22); 337 So. 3d 615 (citations omitted).

summary action for eviction of a tenant or lessee under these articles involves the single issue of whether the lessor is entitled to receive back possession of the leased premises."[78] A plaintiff in a summary eviction proceeding cannot seek past rent or other money damages in that summary eviction proceeding.[79] The Fifth Circuit has recognized that "only the value of the right directly in issue in the particular suit, not the collateral effect of the judgment, may be considered in making up the necessary jurisdictional amount."[80]

The Fifth Circuit has not spoken clearly on how to determine the monetary value of the right of possession—the object of the litigation in an eviction proceeding. The Fifth Circuit's district courts and other federal courts have followed different methods for determining the monetary value of the right of possession in eviction cases.

First, one method for calculating the value in possession, as outlined in *Levet*, is the "marginal change in plaintiff's economic position if it obtains possession."[81] "To do this, the Court compares the plaintiff's economic position with and without possession."[82] In *Levet*, the presiding judge explained that "[i]f [the plaintiff] were able to re-lease the premises to another tenant at a monthly rental amount greater than what it would receive from [the defendant] under the Lease, then the value of possession could be measured as the difference between the rent received from the new tenant and the rent [the plaintiff] would have received from [the defendant]."[83] The

---

[78] *Id.*

[79] *Levet*, 2003 WL 21715010, at * 2.

[80] *Burks v. Texas Co.*, 211 F.2d 443, 445 (5th Cir. 1954).

[81] *Levet*, 2003 WL 21715010, at *3.

[82] *Id.*

[83] *Id.*

presiding judge also explained that "[a]s an alternative, if [the defendant] were unable to pay rent under the lease, then possession would give [the plaintiff] the ability to re-lease the premises to another tenant, and the value of possession would be the rent [the plaintiff] could collect from a new tenant."[84] The presiding judge in *Levet* also noted that the plaintiff "is entitled to at least the monthly rent currently due under the lease, whether or not it terminates the Lease and obtains possession of the leased premises."[85]

In *Wright v. AT & T Mobility, LLC*, another judge in the Eastern District of Louisiana applied the marginal change method outlined in *Levet* and held that the amount in controversy was met because of the rental amount discussed in rental negotiations between the plaintiff and the defendant.[86] In *Wright*, the plaintiff sought eviction of the defendant after the defendant did not pay rent for eight years.[87] The presiding judge found that the amount in controversy was met because the plaintiff was collecting zero dollars in rent, as there was no lease agreement, but now would collect $1,800 monthly rent indefinitely based on the lease negotiations between the parties.[88] The presiding judge further reasoned that the "defendant's proposed 'initial' 20-year lease term suggest contracting parties would generally contemplate a lease term in excess of 3.5 years" for the $75,000 amount in controversy to be met.[89]

---

[84] *Id.*

[85] *Id.*

[86] *Wright*, 2013 WL 1559323 at *3.

[87] *Id.* at *1.

[88] *Id.* at *3.

[89] *Id.* at *3, n.21.

Second, another method for determining the value in possession is the rental value for the length of the lease period, including future rent payments that are contemplated during lease renewal negotiations. In *Scott-Burr Stores Corp. v. Wilcox*, the Fifth Circuit held that the amount in controversy was met when the parties attempted to renew a lease for a period of ten years that totaled $51,000 in rent.[90] Many federal courts have utilized this approach.[91]

Third, another method for calculating value in possession is the amount of rent for at least one year, as a judge in the Southern District of Texas held in *Ezon v. Cornwall Equities Ltd*.[92] However, the presiding judge in *Ezon* noted that his decision was limited to "the instant case."[93]

Fourth, other federal courts outside of the Fifth Circuit have looked to the amount of rent arrears to determine if the amount in controversy was satisfied.[94] In *Bem I, L.L.C. v. Anthropologie, Inc.*, an eviction case removed from Illinois state court, a judge in the Northern District of Illinois discussed the applicability of various value in possession calculation methods, and determined that

---

[90] *Scott-Burr Stores Corp. v. Wilcox*, 194 F.2d 989, 990 (5th Cir. 1952).

[91] *Dosdall v. Fraser*, 246 F.Supp. 311, 314 (D. Mont. 1965) ("the conclusion seems inescapable that the amount in controversy is the rental value for the term of the lease."); *Range Oil Supply Co. v. Chicago, Rock Island and Pac. R.R. Co.*, 248 F.2d 477, 478–79 (8th Cir. 1957) (affirming district court order that determined the amount in controversy as "[t]he value of the exclusive use of this land, for what may well be an indeterminable length of time, … although such value may be incapable of precise measurement"). *But see Rubel-Jones Agency, Inc. v. Jones*, 165 F.Supp. 652, 656 (W.D. Mo. 1958) ("The value of future installments of rent may not be considered in ascertaining the amount in controversy.").

[92] *Ezon v. Cornwall Equities, Ltd.*, 540 F.Supp. 885, 889 (S.D. Tex. 1982). The court did not determine a precise formula for determining rental value as value in possession.

[93] *Id.* At least one federal court judge has expressed concern about this method, reasoning that "[i]f the term of the lease is ten years, the court is hard-pressed to make sense of a formula that calls for the application of an arbitrary one year cut-off for determining the amount in controversy. *Bem I, L.L.C. v. Anthropologie, Inc.*, No 98 C 358, 1999 WL 1212643, at *5, n.7 (N.D. Ill. Dec. 14, 1999).

[94] *Id.* at *6. *See also Mutual First, Inc. v. O'Charleys of Gulfport, Inc.*, 721 F.Supp. 281 (S.D. Ala. 1989) (holding that there are several methods to calculate the amount in controversy in an eviction proceeding and that looking only at the alleged amount of rent in arrears is sufficient).

the rent arrears method was most suitable in that case.[95] Illinois's Forcible Entry Detainer Statute primarily "provides a summary method of determining the right to possession of property in a dispute between a landlord and a tenant" but "[n]evertheless, a claim for rent may be joined in the complaint and judgment may be entered for the amount of rent due."[96] The defendant "argue[d] that the amount in controversy should be determined with respect to the amount the Tenant would owe for the entire term of the Lease, including amounts potentially owed if Tenant were to exercise options to renew the lease."[97] The court declined to apply the term of the lease/future rents method of calculation because "the provision of the Lease which recites both Tenant's obligations for future rents in the event of a breach and Landlord's obligation to mitigate damages is a liquidated damages clause."[98] The court reasoned that because "the purpose of the Illinois statute is to provide summary proceedings with a quick resolution on the issue of possession only, to which a claim for past rent due may be joined … the court is unwilling to calculate the value of possession based on a liquidated damages in the form of accelerated rent payments."[99]

## 2. Analysis

Plaintiff and Defendant both cite to the marginal change calculation method outlined in *Levet* and *Wright* but they both misapply this calculation method.[100] Plaintiff's argument that the

---

[95] *Bem*, 1999 WL 1212643, at *4–6.

[96] *Id.* at *4 (citations omitted).

[97] *Id.* at *5.

[98] *Id.*

[99] *Id.* The court noted that "it has serious reservations about the validity of" the term of the lease/future rent payments method because "essentially, any forcible entry and detainer action involving a commercial lease would be removable to federal court" and would defeat the purpose of the Illinois statute in quickly resolving the issue of possession in a summary eviction proceeding. *Id.* at *5, n. 7.

[100] Rec. Doc. 5-2 at 7; Rec. Doc. 6 at 2–4.

16

amount in controversy is zero because it is not seeking any back rent appears to reflect the rent arrears calculation method the *Bem* court followed.[101] Plaintiff's alternative argument that the expired lease's rent of $2,500 a year would require at least 30 years to exceed $75,000 is also a misapplication, as it does not consider the new higher rent amounts it negotiated with Defendant.[102] Defendant argues that in its lease renewal negotiations with Plaintiff, Defendant's rent proposal of $5,000 per year for 20 years amounts to $100,000 and Plaintiff's counter proposal of $6,000 per year for 20 years amounts to $180,000.[103] However, this is a misapplication of the marginal change method in *Levet* because it does not consider the difference between the rent under the expired lease and these proposed rent amounts. As *Levet* noted, the plaintiff in that case "is entitled to at least the amount of monthly rent currently due under the lease, whether or not it terminates the Lease and obtains possession of the leased premises."[104] The Surface Lease between Plaintiff and Defendant here does not contain a rent abatement provision that would allow Defendant to pay no rent based on certain conditions, so Defendant would still owe rent as long as it continues to possess Plaintiff's property after the lease's expiration.[105] Thus, Defendant's argument is actually

---

[101] Rec. Doc. 5-2 at 7–8. *See Bem*, 1999 WL 1212643, at *6.

[102] Rec. Doc. 5-2 at 7–8; Rec. Doc. 6-2.

[103] Rec. Doc. 6 at 3.

[104] *Levet*, 2003 WL 21715010, at * 3.

[105] *See* Rec. Doc. 1-2. *Compare MCC Mortg. LP v. Office Depot, Inc.,* 685 F. Supp.2d 939, 944–45 (D. Minn. 2010) (finding that because Office Depot was paying zero dollars in rent due to a rent abatement provision in the lease, the eviction of Office Depot would likely lead to MCC re-leasing the property for $10,000 a month in a multi-year lease to meet the $75,000 amount in controversy); *Wright*, 2013 WL 1559323, at *3 (finding that the amount in controversy requirement was met because the defendant was paying zero dollars in rent due to the lack of a lease agreement between the plaintiff and the defendant but the defendant would pay monthly rent of $1,800 for twenty years per the parties' lease negotiations).

reflective of the second method discussed above, the rental value for the length of the lease/future rent payments method.[106]

The Court finds that the marginal change approach is the method best suited for calculating value in possession in this case. The rent arrears approach would guarantee that no eviction case may be removed to federal court since Louisiana law does not allow a plaintiff to pursue rent arrears in an eviction case.[107] On the other hand, the rental value for the term of the lease approach would almost guarantee that every commercial eviction case would be removable to federal court, as one federal court has commented.[108] The marginal change approach is an appropriate method to balance the extremes of the rent arrears and the rental value for the term of the lease/future rent payments approaches in calculating the value of possession in an eviction action.

The total rent Plaintiff collected from Defendant under the Surface Lease was $2,000 per year for the first ten years and $2,500 per year for the next ten years under the renewal.[109] In total, this amounts to $45,000 over the 20-year period of the Surface Lease. In the lease negotiations between the parties, Plaintiff proposed annual rent of $6,000 with a 5-year term and "an option to renew the lease for 3 additional 5-year terms, with the rent adjusted according to the Consumer Price Index ('CPI') on the 5th, 10th, [and] 15th anniversar[ies]."[110] Under Plaintiff's proposed terms,

---

[106] *Scott-Burr Stores Corp.*, 194 F.2d at 990.

[107] *Levet*, 2003 WL 21715010, at *2. *Compare Bem*, 1999 WL 1212643, at *5 (the Illinois Forcible Detainer Statute allowed a Plaintiff to seek past rent owed as damages in a summary eviction proceeding).

[108] *Bem*, 1999 WL 1212643, at *5, n.7.

[109] Rec. Doc. 1-2 at 20.

[110] Rec. Doc. 6-2 at 4. Defendant proposed annual rent of $5,000 for two 10-year terms. *Id.* at 3. However, in the Fifth Circuit, "'[t]he value to the plaintiff of the right to be enforced or protected determines the amount in controversy.'" *Garcia*, 351 F.3d at 639 (citation omitted). Therefore, the Court considers Plaintiff's proposed rental terms as a measure of the value to Plaintiff of the right it seeks to enforce.

18

it is certain that the rent for the first five years is $30,000. Assuming that the rent remains at $6,000 at the 5th, 10th, and 15th anniversaries, the total rent over twenty years would be $120,000. The difference between $120,000 under Plaintiff's proposed lease renewal and the $45,000 in rent Plaintiff has collected for twenty years under the Surface Lease is $75,000. Although the CPI in the future is unknown, the Court can make the reasonable inference that the CPI will be above zero and that any CPI above zero on either the 5th, 10th, or 15th anniversaries will result in the annual rent exceeding $6,000 and thus the amount in controversy exceeding $75,000. Therefore, the amount in controversy requirement is met for the Court to exercise diversity jurisdiction under 28 U.S.C. § 1332(a).

## V. Conclusion

For the reasons discussed above, the Court concludes that Defendant has established that the Court has jurisdiction over this matter under 28 U.S.C. § 1332(a).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Harry Bourg Corporation's "Motion to Remand"[111] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this ___16th___ day of November, 2023.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[111] Rec. Doc. 5.